(No. 33380.—

EDWARD GROLLEMOND, Plaintiff in Error, *vs.* THE INDUS-TRIAL COMMISSION *et al.*—(WHITING CORPORATION, Defendant in Error.)

*Opinion filed March 24, 1955—Rehearing denied May 16, 1955.*

POSANSKI, JOHANNSEN, KROHN & JACOBS, of Chicago, (ROMAN E. POSANSKI, and HOMER V. JOHANNSEN, of counsel,) for plaintiff in error.

THOMAS C. ANGERSTEIN, GEORGE W. ANGERSTEIN, and CHARLES T. SHANNER, all of Chicago, for defendant in error.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

This cause is heard on a writ of error to review the judgment of the circuit court of Cook County, which affirmed the decision of the Industrial Commission denying Edward Grollemond, herein referred to as petitioner, compensation under the Workmen's Occupational Diseases Act from his employer, Whiting Corporation.

It is incumbent upon this court to determine the scope of review under the statutory writ of *certiorari* provided under section 19(f), (1) and (2), of the Workmen's Occupational Diseases Act, (Ill. Rev. Stat. 1947, chap. 48, par. 172.19,) and whether the circuit court erred in holding that the decision of the Industrial Commission was not contrary to the manifest weight of the evidence. It is necessary, therefore, to review the evidence, including the voluminous medical testimony.

Petitioner, Edward Grollemond, was employed by Whiting Corporation in its foundry as a chipper, from November 11, 1940, until July 3, 1947, when he left on his vaca-

tion and did not return to work thereafter. He had been off work for ten days in June because of pains in his back and chest, during which time he consulted Dr. Towle, under whose care he has remained, but who did not testify in this case. On July 2, 1947, petitioner consulted Dr. Novak, and on July 3, before leaving his employment, petitioner collected dust samples from the area where he worked. He reported his illness to his employer on July 22, 1947, and the application for adjustment of claim was filed September 5, 1947, alleging July 3, 1947, as the approximate date of last exposure, and of disablement from silicosis, for which compensation was sought for permanent total disability.

At the hearing before the arbitrator the primary question in dispute was whether or not petitioner on July 3, 1947, sustained a disablement which resulted from an occupational disease.

According to petitioner's testimony, he was unable to work, and could only help with light household duties, which exhausted him. He complained of a wide variety of physical symptoms, including shortness of breath, pains in his chest and stomach, aches in his limbs, and inability to sleep with a pillow; and stated that he had been coughing for three years.

Dr. Weissman, who examined petitioner on September 4, 1947, at the suggestion of petitioner's attorney, testified that the X rays showed increased hilar markings in the lung field, numerous nodulations, and some emphysema, but he made no findings of any heart condition, tuberculosis, or superimposed infection. He admitted that it is not unusual to find silicotic nodules more pronounced and larger than in any of petitioner's X rays where there are no complaints at all, that there was a weight gain on the second examination, that petitioner responded normally to the exercise test, and that there was a reduction in respiratory excursion. In his opinion petitioner had silicosis and was permanently disabled.

Petitioner also introduced the testimony of Dr. Julius Novak, who examined petitioner and diagnosed his condition as silicosis, second degree type, with discernible nodules, but no conglomeration, and some emphysema. He found no tuberculosis or infectuous condition, but in his opinion petitioner was totally and permanently disabled to do any physical work.

Dr. Ellis Freilich, testifying for petitioner, made a diagnosis of silicosis of the lungs with some coalescence, an increase in heart size, and emphysema; and stated that a person in this state of health would be unable to continue sustained manual labor. He found that many of petitioner's subjective complaints were unrelated to silicosis.

The employer offered the testimony of two employees who worked with petitioner. They both stated that they had never noticed petitioner coughing, and that he had never made any complaints about ill-being or inability to perform his work, except for his back complaints in June, 1947, when he asked to be transferred to a different job. They testified that respirators were available, but the men objected to wearing them because they could not smoke with them on.

Dr. Sander, an authority on silicosis, whose testimony comprised some 135 pages, testified for the employer that a diagnosis of silicosis does not necessarily mean disability, and from a description of the X-ray findings of nodules of from one to three millimeters in size, without evidence of tuberculosis or any pulmonary infection (according to the X-ray diagnosis of petitioner's witness, Dr. Weissman), that condition would not be disabling. He found that petitioner's X rays revealed nodulations indicating first stage silicosis, which is never disabling, and that it would not cause shortness of breath. He found no evidence of emphysema, and a normal heart shadow.

In the opinion of Dr. Roland Jacobson, who testified for the employer, on the basis of physical examinations, exercise

tests, laboratory and X-ray examinations, petitioner had a simple silicosis which was not disabling, and that the symptoms he complained of could not be due to the silicosis.

The arbitrator found, in substance, that petitioner sustained a disablement which resulted from silicosis which arose out of and in the course of his employment, for which compensation was payable by the employer for permanent total disability.

At the hearing on review before the Industrial Commission, both petitioner and the employer offered additional medical evidence.

On behalf of the employer, Dr. Paul G. Dick testified that all of the X rays revealed simple silicosis not superimposed by an infection, that the largest nodulation did not exceed three millimeters, that such silicosis could not cause any disability for ordinary manual work, and that an electrocardiogram taken showed no heart condition that could be attributed to silicosis. Dr. Roland Jacobson again testified to another examination of claimant, which included further X rays which revealed no indication of emphysema or conglomeration. He stated that petitioner's response to the exercise test was normal, as was the laboratory report of his blood test; and that from physical examination there was no lung condition that should cause shortness of breath. Dr. N. S. Davis stated that his examination and laboratory tests of petitioner revealed good chest expansion without material fibrosis; that the blood picture was normal; that there was no evidence of right hypertrophy of the heart; and that in the X rays there was some evidence of nodulation, but no area of conglomeration, and that the nodulation as seen in the X rays would not have any effect on the heart.

On petitioner's behalf, Dr. William McNally testified that, based on physical examination and X-ray interpretation, petitioner has silicosis and a hypertrophied heart, and marginal emphysema, and that petitioner became cyanotic

on exercising and is incapacitated from doing work requiring physical exertion. He found no tuberculosis, that most of the nodules are two millimeters in diameter, and some possible coalescing areas of the nodules.

It was stipulated that Dr. Ellis Freilich, who examined petitioner again on November 20, 1948, and submitted a written report of his findings, substantially in accordance with his previous report, would testify accordingly.

Petitioner again testified that he was short of breath on exertion from household chores, had chest pains on both sides, was in constant pain every day and night, and was still under Dr. Towle's care, taking the prescriptions given him.

On the basis of this record, the Industrial Commission on review set aside the award of the arbitrator, and denied compensation on the ground that petitioner did not sustain a disablement within the provisions of section 1(e) (formerly section 5) of the Workmen's Occupational Diseases Act.

That decision was reviewed on a writ of *certiorari*, and on November 1, 1951, the circuit court of Cook County, Judge Bicek presiding, entered an order finding that the decision of the Industrial Commission was in accordance with law and not contrary to the manifest weight of the evidence, and should be confirmed.

On November 30, 1951, however, there was a substitution of counsel for petitioner, and a motion to vacate was filed, upon which the court ruled on June 5, 1952. In that order the court vacated the order of November 1, 1951, and remanded the cause to the Industrial Commission, to which counsel for the employer objected on the grounds of jurisdiction.

Since the validity of the order of June 5, 1952, is a controverted issue in this cause, it is set out *in haec verba:*

"This cause coming on to be heard upon plaintiff's motion, filed November 30, 1951, to vacate the order entered herein on November 1, 1951, and upon due notice, and

after a full hearing, it is ordered that the order entered on November 1, 1951 be vacated and set aside and held for naught. The Court further finds that the original award of the Industrial Commission was not contrary to the manifest weight of the evidence; however the record does not disclose any testimony being taken to determine whether or not the silicosis as established thereby became disabling within 3 years after the date of the last exposure on, to wit, July 3, 1947.

"It is further ordered by the court that the said cause be remanded to the Industrial Commission for the purpose of taking additional proofs upon this question and to make its findings in accordance with such additional proofs."

The record recites that it was the understanding of the court and counsel that even though there actually was considerable testimony as to whether the silicosis was disabling, the cause was remanded to determine whether the silicosis became disabling after the date of the last medical examination testified to at the last hearings, but prior to the three-year limitation for silicosis disablement in section 1(f) of the Workmen's Occupational Diseases Act.

In the proceeding on remandment the employer entered a special and limited appearance, and filed a motion objecting to the jurisdiction of the Industrial Commission to proceed under an order of the circuit court which exceeded its jurisdiction. The Industrial Commission overruled the employer's motion, and heard further testimony of petitioner and Dr. Julius Novak.

Petitioner stated that he had pains in his chest, and was weak and dizzy as he had previously testified. He had worked as a State License Examiner on July 11 and 12, 1949, and as a bartender for the Illinois Liquor Mart from July 16, 1949, until October 9, 1949. He resumed work there on March 24, 1950, and has been continuously employed there at a rate of pay of $39.40 a week. He stated further that he was examined by Dr. Julius Novak in

October, 1949, and had X rays taken at that time and again on July 11, 1950.

Dr. Novak testified that in the subsequent X rays the heart appeared normal in size and there was pneumo-coniosis—of which silicosis is one type—of the second degree; that the X rays were almost the same as the prior X rays, except for a few areas of consolidation in the upper part of the lung; that if there was any change in the progression it was slight; and that petitioner was worse. In his opinion petitioner had the same condition as was testified to on arbitration and on review, and was, and had been, totally incapacitated for any manual work since 1947.

The Industrial Commission found in the remanding proceeding that petitioner failed in the burden of proof to establish that he sustained a disablement as a result of an occupational disease three years after the date of the last exposure, the third day of July, 1947, from which petitioner again filed a writ of *certiorari*.

The circuit court consolidated the two *certiorari* proceedings, and ordered that the respective records, certified by the Industrial Commission, be combined and certified as a complete record. On the basis of that consolidated record, the court entered an order on June 10, 1954, which stated, "Wherefore it is hereby ordered that upon the record presented for decision the decision of the Industrial Commission was not contrary to the manifest weight of the evidence and that it stand in full force and effect; and that the Writ of Certiorari be hereby quashed." The court also found that the previous order of the circuit court of June 5, 1952, was void on the ground that the court had no jurisdiction to remand where it found that the decision of the commission was in accordance with law and not contrary to the manifest weight of the evidence.

That judgment of the circuit court of June 10, 1954, is now on review before this court on a writ of error.

Petitioner claims herein that the order should be reversed on the grounds that the circuit court sat as a reviewing court, reversing an order entered in the same court by a different judge in a different case, two years previously; that the circuit court in the prior order had jurisdiction to remand the cause; that petitioner was deprived of his right of review by the holding that the prior order was void; that the second decision of the Industrial Commission ignored uncontroverted evidence and was without substantial foundation; and that the original decision of the Industrial Commission was contrary to the manifest weight of the evidence.

The employer, however, argues that the original decision of the Industrial Commission was proper and in accordance with law; that the order of the circuit court of June 5, 1952, holding that the decision of the Industrial Commission was not contrary to the manifest weight of the evidence and was in accordance with law, and at the same time remanding the cause for additional evidence to determine whether a disablement subsequently developed, was beyond the jurisdiction of the circuit court under the statutory writ of *certiorari;* and that the order of the circuit court of June 10, 1954, properly affirmed the decision of the Industrial Commission.

We shall consider first whether the circuit court properly found that the remanding order of June 5, 1952, was void for want of jurisdiction. That prior order did not involve a different case, as petitioner suggests. On the contrary, it was merely a different stage of this same proceeding, and was before the court in one record on June 10, 1954.

It is established that all courts, including courts of coordinate jurisdiction, have the right to declare a judgment of another court void for want of jurisdiction. (21 C.J.S. 768.) At the time the order of June 5, 1952, was entered, the cause was before the court upon a statutory writ of

*certiorari,* under section 19(f)(1) of the Workmen's Occupational Diseases Act. (Ill. Rev. Stat. 1947, chap. 48, par. 172.19(f).) The powers which the court may exercise by virtue of that writ are limited to the powers conferred by the Workmen's Compensation Act and Workmen's Occupational Diseases Act. *Nierman* v. *Industrial Com.* 329 Ill. 623; *Central Illinois Public Service Co.* v. *Industrial Com.* 293 Ill. 62.

Section 19(f)(1) of both those statutes provides that the circuit court shall by writ of *certiorari* to the Industrial Commission have the power to review all questions of law and fact *presented* by the record. The third paragraph of section 19(f)(2) provides: "The Court may confirm or set aside the decision of the industrial commission. *If the decision is set aside* and the facts found in the proceedings before the commission are sufficient, the court may enter such decision as is justified by law, or may remand the cause to the industrial commission for further proceedings and may state the questions requiring further hearing, and give such other instructions as may be proper." (Italics added.)

Petitioner relies upon this section as authority for the remanding order. It is patent, however, that the statute authorizes a cause to be remanded to the commission only where the decision of the commission is set aside, and not where the decision of the commission is found to be in accordance with law and not against the manifest weight of the evidence.

In all the cases cited by petitioner, where the court sanctioned remandment for further evidence, the court found that the decision of the commission for the claimant was not supported by the evidence, and set aside and reversed the award of the commission, and then sent the cause back for further evidence on an issue presented in the record. *Camp Spring Mill Co.* v. *Industrial Com.* 302 Ill. 136; *American Smelting and Refining Co.* v. *Industrial*

*Com.* 353 Ill. 324; *Peabody Coal Co.* v. *Industrial Com.* 289 Ill. 330.

In *Camp Spring Mill Co.* v. *Industrial Com.* 302 Ill. 136, the commission entered an award for total permanent disability, which the court found not justified by the evidence; hence, the award was set aside and the cause remanded with instructions to determine the extent of disability.

In *American Smelting and Refining Co.* v. *Industrial Com.* 353 Ill. 324, the commission entered an award for plaintiff, who offered no medical evidence, and the court held that the award must be set aside, since scientific questions were involved; hence the cause was remanded for plaintiff to produce the doctor who examined him at the time of his alleged disablement.

In *Peabody Coal Co.* v. *Industrial Com.* 289 Ill. 330, the award of the commission was set aside and the cause remanded to determine the issue of support, since the record failed to establish that essential element of the case.

In the instant case, however, the court found both initially, on November 1, 1951, and again on June 5, 1952, that the decision of the commission denying compensation was in accordance with law and not contrary to the weight of the evidence, and, therefore, it was not set aside. Clearly, the action of the court in remanding the cause, where there was no error, to permit petitioner to have another chance to prove his case, was not within the terms of the statute, nor sanctioned by the case law.

Moreover, in remanding the cause the court did not confine its review to questions of law and fact "presented by the record," since the essential issue before the commission was whether petitioner *on July 3, 1947,* sustained a disability which resulted from an occupational disease.

There was no allegation in the pleadings, nor a scintilla of evidence in the record that petitioner became disabled at any later date, nevertheless, the court conjectured, *dehors*

the record, whether petitioner could have developed a disability after the date of the last testimony, but before the expiration of the three-year statutory period from the date of last exposure. The cause was remanded solely to consider that new issue.

Disablement, as defined in the statute (section 1(e) of the Workmen's Occupational Diseases Act), relates to the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the disease by the employer from whom he claimed compensation, or equal wages in other suitable employment. The petitioner must establish such disablement as part of his cause. When, however, petitioner has not established disablement on the date alleged in the application, or at any other time, according to the record, it is not within the terms of the Workmen's Occupational Diseases Act to remand the cause, long after the time of limitations for filing claims for such disablement would have run (as in this case), on the theory that he might now be able to establish that he became disabled.

· Therefore, the order of June 5, 1952, remanding the cause to consider a new issue, where the decision of the commission was not set aside, exceeded the jurisdiction of the court and was void.

Even if that remanding order were deemed proper, and the ensuing proceeding held valid, we cannot sustain petitioner's contention that the order of June 10, 1954, deprived him of his right of review of the proceeding before the commission, since the court's decision was predicated upon the entire consolidated record. That record included the proceedings before the Industrial Commission under the remanding order, and the order of the court of June 10, 1954, plainly recited that it was entered on the basis of the record presented for decision.

Nor is there any substance to petitioner's contention that the decision of the Industrial Commission on the re-

manding order ignores uncontroverted evidence. Although the employer did not offer additional evidence, but merely objected to the jurisdiction of the commission, nevertheless the commission had before it the entire record containing some 308 pages of respondent's medical evidence to the effect that no disability was established. Hence, there was no uncontroverted evidence at that hearing before the commission.

Nor did the new evidence submitted by petitioner establish the event of disability at any later date. The medical testimony was essentially a reiteration of the diagnosis given at the original hearing before the arbitrator. The doctor stated that disablement existed as of the original date and admitted that any progression in the disease revealed by subsequent X rays was slight. In view of the extensive testimony disputing disablement as of the original date, the decision of the Industrial Commission that no disablement was established could not be deemed to be without substantial foundation.

We shall consider next whether the circuit court erred in finding that the decision of the commission denying compensation was not contrary to the manifest weight of the evidence. To recover under the Workmen's Occupational Diseases Act, petitioner is required to establish not only that he incurred the occupational disease of silicosis, but that he became disabled therefrom within three years of the date of last exposure. Disablement is defined in the statute (section 1(e), formerly section 5, of the Workmen's Occupational Diseases Act) as "the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer from whom he claims compensation, or equal wages in other suitable employment."

To justify an award for permanent total disability from silicosis, the evidence must be clear and convincing.

(*American Manganese Steel Co.* v. *Industrial Com.* 399 Ill.
272.) In the instant case, on this issue of disablement there
is a record of over 500 pages of medical testimony wherein
experts, testifying on behalf of petitioner and the employer,
respectively, were diametrically opposed. The doctors testi-
fying for petitioner diagnosed his condition as second
degree silicosis with some nodulation but no coalescence.
Some of his doctors also found a heart condition, emphy-
sema, others did not; yet they offered opinions that peti-
tioner was totally and permanently disabled from manual
labor. The doctors testifying for the employer found that
petitioner had simple silicosis with some nodulation not
exceeding three millimeters, which was not disabling, or
indicative of the subjective complaints to which petitioner
testified. They found no heart condition or emphysema.
All of the doctors testifying agreed that petitioner's silicosis
was not superimposed with any infectuous condition or
tuberculosis.

In resolving this controversy, this court cannot be as-
sisted by petitioner's argument that the doctors testifying
for the employer have frequently represented employers
and are therefore prejudiced on their behalf and not worthy
of credence, since it is conversely true that the names of
the doctors testifying for petitioner appear repeatedly in
the reports as testifying on behalf of employees.

The Illinois reports are replete with compensation cases
involving controverted testimony of medical experts, par-
ticularly in silicosis cases, since that occupational disease
is relatively new, and industrial medical research in it has
been rapidly progressing. Under those circumstances we
have uniformly stated that the court will not determine
which of two groups of experts is more worthy of belief,
or whose evidence is entitled to the greater weight, or
determine with technical accuracy where the preponderance
of evidence lies. That is deemed the function of the Indus-
trial Commission, and its decision will be sustained, whether

it be in favor of the employee (*Buda Co.* v. *Industrial Com.* 377 Ill. 215, 220,) or the employer, (*Turner* v. *Industrial Com.* 393 Ill. 528; *American Manganese Steel Co.* v. *Industrial Com.* 399 Ill. 272,) unless its findings are against the manifest weight of the evidence.

In the *Buda case* the court stated at page 220: "The material conflict * * * in the evidence of medical experts is not unusual, for frequently experts appearing to possess the same general qualifications gained from experience and study make an examination of the same person, read the same X-ray films and come to conclusions diametrically opposed. Such conditions present a question of fact for the commission * * *."

In *Turner* v. *Industrial Com.* 393 Ill. 528, the commission found that there was no disablement due to silicosis, and this court sustained the commission, even though there was an 18-year exposure to the disease, and the medical experts disagreed as to what stage of the disease the claimant was in, as in the instant case. The court noted that silicosis could be present on the date of disablement alleged in the application, yet it may not be disabling at that time, as the commission found in the case at bar.

A similar result was reached by this court in *American Manganese Steel Co.* v. *Industrial Com.* 399 Ill. 272, where the claimant had silicosis, and the issue before the commission was whether there was a disablement due to the disease. There was controverted medical testimony, as in the instant case, and the commission denied compensation. In sustaining the commission, this court stated at page 278 that "Merely disagreeing with the result reached by the commission, or feeling sorry for an applicant for compensation, is not sufficient to justify overruling the order of the commission" on this issue.

In the instant case the commission gave greater credence to the testimony of one group of experts. That body had occasion to view those witnesses, including petitioner, and

556

observe "The little differences in speech, the carriage, the tone of voice, and many other factors which can not be contained in the dry printed words of a transcript," and which have a bearing on the decision. *Gump Co.* v. *Industrial Com.* 411 Ill. 196.

Inasmuch as it is well settled that the mere fact that petitioner has silicosis does not establish that it is disabling (*Turner* v. *Industrial Com.* 393 Ill. 528,) and since respondent offered the testimony of medical authorities and silicosis specialists who found that petitioner's condition was not disabling, and since he earned full wages up to the date of the alleged disablement—a factor deemed material in the *Manganese Steel Co. case*—this court cannot find that the decision of the Industrial Commission was without substantial foundation in the evidence or contrary to the manifest weight of the evidence.

In the light of this analysis, we find that the decision of the circuit court in the order of June 10, 1954, confirming the decision of the Industrial Commission, was in accordance with law and should properly be affirmed.

*Judgment affirmed.*